# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

In the matter of:

SANDRA DURAN,

       Plaintiff,

v.

OFFICE OF THE CHIEF JUDGE OF COOK COUNTY JUVENILE TEMPORARY DETENTION CENTER,

       Defendant.

Case Number: 22-cv-3034

## **COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff SANDRA DURAN ("Plaintiff") by and through undersigned attorney, complaining of Defendant OFFICE OF THE CHIEF JUDGE OF COOK COUNTY JUVENILE TEMPORARY DETENTION CENTER ("JTDC") for violations of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 20000e *et seq*.), the Age Discrimination in Employment Act of 1967, as amended (29 U.S.C. § 621 *et seq*.), and the Americans with Disabilities Act (42 U.S.C. § 12101 *et seq*.). In support of her claims, Plaintiff states as follows:

## **JURISDICTION AND VENUE**

1.     Jurisdiction of this court is proper under 28 U.S.C. 451, 1331, 1337, and 1342. This action is instituted under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 20000e *et seq*.), the Age Discrimination in Employment Act of 1967, as amended (29 U.S.C. § 621 *et seq*.), and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. Plaintiff filed a complaint of discrimination with Equal Employment Opportunity Commission on January 8, 2021 for her Title VII, ADA and ADEA claims. Because

Defendant is a public employer, Plaintiff received a Notice of Right to Sue from the Department of Justice on March 11, 2022.

2. Venue is proper under 28 U.S.C. § 1391(b). The parties reside and/or conduct business in this judicial district, and the events giving rise to the claims asserted herein occurred in this judicial district as well.

**THE PARTIES**

3. Plaintiff SANDRA DURAN ("Plaintiff") has been employed at Defendant since 2013. She is still employed at Defendant.

4. Defendant OFFICE OF THE CHIEF JUDGE OF COOK COUNTY JUVENILE TEMPORARY DETENTION CENTER ("JTDC") is a public employer charged with overseeing Cook County's temporary detention facilities for juveniles. At all times alleged in this Complaint, JTDC was Plaintiff's employer.

**FACTUAL ALLEGATIONS**

1. Plaintiff began working at JTDC in or around 2010. Her current position is Youth Development Specialist, which she began in 2013.

2. At all times relevant, Plaintiff was performing her duties in a satisfactory manner and was meeting the performance standards set by JTDC.

3. Plaintiff's race is Latina.

4. Plaintiff's national origin is Mexican, she was born in Chicago.

5. At all times alleged in this complaint, Plaintiff was over the age of forty (40).

6. Plaintiff is diabetic. As a result of her diabetes, Plaintiff requires short periodic food, water and bathroom breaks.

7. In March of 2020, Plaintiff requested reasonable accommodations for her diabetes. Specifically, she requested short breaks to use the restroom, and she requested to be able to have water and small amounts of food on her person or near her. Plaintiff provided documentation from her doctor when she requested the accommodations. Her request included an FMLA request for intermittent leave.

8. Plaintiff's supervisors are mostly not Latino.

9. JTDC is organized into four separate units (A, B, C, and D), each housing juvenile detainees in temporary custody.

10. Plaintiff is the only Youth Development Specialist at the D-unit (also known as "Destiny unit") over 40 in her department on the AM shift, where she worked at all times alleged in this complaint.

11. Plaintiff's current position as Youth Development Specialist requires her to interact with juveniles in detention.

12. On occasion, Plaintiff has experienced violent or harassing behavior from juvenile detainees. For example, she has been threatened, hit and spit at.

13. Typically, where Youth Development Specialist encounters threats or violence from a detainee, the practice at JTDC has been to move the specialist to a different unit so as to separate them from the detainee.

14. When Plaintiff experienced violent or harassing behavior for a detainee, her supervisors did not move her to a different unit. This occurred in JTDC's D unit. Detainees threatened her, exposed genitals to her and mocked her on a daily basis. Plaintiff's supervisors did not move her.

15. Rather, Plaintiff's supervisors, specifically Assistant Team Leader Cassandra Bell, kept her in the unit and would undermine her authority in front of the detainees. They would bury Plaintiff's complaints and concerns for her safety. Team Leader Darrin Lowery knew of the incidents and did not move Plaintiff to a different unit.

16. Because Plaintiff believed Bell and Lowery were treating her differently from other employees, she reported their treatment to the Director of Residential Life William Stewart. Plaintiff also reported it to her union steward. Stewart told Plaintiff he would look into it. Plaintiff never heard back from Stewart.

17. After complaining of the harassment and requesting accommodations for her diabetes, Plaintiff experienced retaliation from her supervisors.

18. Plaintiff complained about the interference with her reasonable accommodations and experienced further retaliation from supervisors.

19. This includes that supervisors allowed other staff to interfere with Plaintiff's reasonable accommodations without recourse. On several occasions, Plaintiff was threatened with discipline for requesting a water or bathroom break, or for trying to eat small amounts of food to keep her blood sugar normal. This also includes that supervisors encouraged other employees to fabricate or exaggerate claims about Plaintiff's performance or behavior.

20. On or about May 20, 2020, Plaintiff requested some food and ice from the kitchen staff and was denied. Not only was she denied, but her request was forwarded to management and she was instructed "not to go to the kitchen to request any food or ice." On or about May 21, 2020, management also created an incident report regarding the event.

21. On or about July 13, 2020, supervisors had a coworker document alleged behavior by Plaintiff. Team Leader Darrin Lowery wrote in the report that the coworker was

"encouraged to do an incident report." The incident report references Plaintiff eating "on the pod". The incident report also, without providing any specificity as to Plaintiff's alleged conduct, directs her to stop contacting another coworker with non-work-related matters.

22. On or about July 14, 2020, Bell wrote in incident report regarding Plaintiff. The incident report alleges Plaintiff called detainees "stupid" and made "some racial comments" about Bell to another coworker. The report does not say what the "racial comments" allegedly made by Plaintiff were. Plaintiff never made racial comments to Rodriguez. Upon information and belief, the "racial comments" were actually complaints Plaintiff made about experiencing race discrimination by her supervisors.

23. Later that same day, on or about July 14, 2020, Assistant Team Leader Chanda Sanders wrote an incident report regarding Plaintiff. The incident report indicates Plaintiff complained to Sanders about harassment from Bell. The incident report indicates Sanders told Plaintiff to take her concerns to management and not to "request random incident reports" from Sanders. The incident report flags Plaintiff for taking a break to eat, calling the break unauthorized even though Sanders acknowledged Plaintiff told her she needed to eat because "she's a diabetic and needed food." Plaintiff provided the investigator with names of witnesses that could corroborate her version of events, but the investigator did not spoke with Plaintiff's witnesses. When Plaintiff asked why, the investigator told her they were taking Bell's statements as true.

24. On or about July 14, 2020, Plaintiff was recommended for disciplinary action for allegedly taking an "unauthorized break". The break was taken as part of Plaintiff's reasonable accommodations for her diabetes.

25. On or about July 29, 2020, Bell wrote another incident report alleging Plaintiff "has been consistent in spreading allegation [sic] of harassment against this writer to anyone that will listen." The report indicates Plaintiff complained that Bell was trying to get her fired. It further states "[s]he has made allegation [sic] of ageism, racial bias against this team and the previous management team." It further states Plaintiff "is exhibiting behaviors and action that question her professional abilities to adhere to the expectation of per post duties." Bell stated Plaintiff's complaints regarding her created for Bell a "hostile work environment."

26. On or about August 5, 2020, Plaintiff was recommended for discipline. Plaintiff was alleged to have "made threatening remarks" regarding another co-worker.

27. On or about August 7, 2020, a coworker named Shonda Blakney wrote a complaint against Plaintiff. The complaint stated that, while she was on break after just having served detainees food, Plaintiff fixed herself some food. Plaintiff needed to eat because of her diabetes.

28. On or about August 13, 2020, Plaintiff was again recommended for disciplinary action for eating on the pod during a break.

29. Plaintiff was placed on paid administrative leave pending the investigations. Plaintiff lost out on overtime hours she could have worked. Plaintiff grieved her placement on administrative leave.

30. The aforementioned incidents are not exhaustive of all the occasions in which Managers have attempted to discipline Plaintiff. Managers at JTDC have made a coordinated effort to undermine Plaintiff's employment and accuse her of violating JTDC policy and

6

procedure. Upon information and belief, this is done so as to undermine the concerns Plaintiff raised about their failure to accommodate her and their discriminatory treatment.

31. In or around April of 2022, Plaintiff was told by the Director of Human Resources Yolanda Reed that she cannot have water on her person. Other employees were allowed to have water on their person. The Chief Union Steward was present and asked the director to clarify whether she meant only Plaintiff could not have water, or everyone could not have water. The director stated only Plaintiff could not have water. Plaintiff included the incident in a grievance.

32. In March of 2022, JTDC changed Plaintiff's accepted accommodations so that she would be subjected to mandatory overtime, which conflicts with the restrictions prescribed by her doctor. Plaintiff's restrictions allow her to work overtime "as tolerated" by her condition, which means that while she is able to work overtime, she must also be relieved of overtimes at times if her diabetes requires her rest. Upon information and belief, JTDC's change of her accommodations was done so as to place Plaintiff in danger of discipline over attendance issues, and to further make her work environment unbearable because of her protected activity.

33. At the same time, since complaining of discrimination and requesting disability accommodations in 2020, Plaintiff has been denied overtime hours, denied promotions and denied more desirable work assignments.

34. Since complaining of discrimination and requesting disability accommodations in 2020, Plaintiff was also denied days off and vacation time she requested, whereas other similarly situated employees were not.

**COUNT I: TITLE VII RACE DISCRIMINATION**

35. Plaintiff reasserts and realleges all previously pled paragraphs as if fully stated herein.

36. Plaintiff is Latina. The overwhelming majority of Plaintiff's supervisors are not Latino/a/x.

37. Defendant subjected Plaintiff to disparate terms and conditions of employment when it treated her differently from other similarly situated, non Latino/a/x employees.

38. This includes, but is not limited to, Defendant's supervisory staff: disparaging Plaintiff in front of other coworkers and detainees, diminishing her complaints of discrimination and accusing her of falsifying complaints of discrimination, threatening her with discipline for arbitrary reasons, imposing discipline on Plaintiff, and denying her promotions and desirable work assignments.

39. Defendant's conduct violated Title VII of the Civil Rights Act of 1964. Defendant's conduct was willful and reckless, and was committed with intentional disregard for Plaintiff's rights under Title VII of the Civil Rights Act of 1964.

40. Defendant's conduct caused Plaintiff damages, including but not limited to, lost wages, emotional harm, and other costs.

**COUNT II: TITLE VII NATIONAL ORIGIN DISCRIMINATION**

41. Plaintiff reasserts and realleges all previously pled paragraphs as if fully stated herein.

42. Plaintiff's national origin is Mexico.

43. Defendant subjected Plaintiff to disparate terms and conditions of employment when it treated her differently from other similarly situated, non-Mexican employees.

44. This includes, but is not limited to, Defendant's supervisory staff: disparaging Plaintiff in front of other coworkers and detainees, diminishing her complaints of discrimination and accusing her of falsifying complaints of discrimination, threatening her with discipline for arbitrary reasons, imposing discipline on Plaintiff, and denying her promotions and desirable work assignments.

45. Defendant's conduct violated Title VII of the Civil Rights Act of 1964. Defendant's conduct was willful and reckless, and was committed with intentional disregard for Plaintiff's rights under Title VII of the Civil Rights Act of 1964.

46. Defendant's conduct caused Plaintiff damages, including but not limited to, lost wages, emotional harm, and other costs.

## COUNT III: AGE DISCRIMINATION

47. Plaintiff reasserts and realleges all previously pled paragraphs as if fully stated herein.

48. Plaintiff is over the age of forty (40).

49. At all times described in this complaint, Plaintiff was the only employee in her department over the age of forty (40).

50. Defendant treated Plaintiff differently from employees under the age of forty (40). This includes, but is not limited to, Defendant's supervisory staff: disparaging Plaintiff in front of other coworkers and detainees, diminishing her complaints of discrimination and accusing her of falsifying complaints of discrimination, threatening her with discipline for arbitrary reasons, imposing discipline on Plaintiff, and denying her promotions and desirable work assignments.

51. Defendant's conduct violated the Age Discrimination in Employment Act of 1967, as amended.

52. Defendant's conduct caused Plaintiff damages, including but not limited to, lost wages, emotional harm, and other costs.

### COUNT IV: DISABILITY DISCRIMINATION

53. Plaintiff reasserts and realleges all previously pled paragraphs as if fully stated herein.

54. Plaintiff is disabled within the meaning of the Americans with Disabilities Act. Plaintiff is diabetic. Her condition is permanent. Plaintiff can perform the essential functions of her position with reasonable accommodation. She requires short breaks for the restroom, and to drink water or have small amounts of food. She requires intermittent FMLA leave for days when her blood sugar is too imbalanced for her to tolerate work.

55. Plaintiff requested reasonable accommodations from Defendant.

56. Plaintiff's reasonable accommodations were at first accepted by Defendant. Defendant then failed to accommodate Plaintiff's disability. Defendant permitted supervisory staff and subordinate staff to deprive Plaintiff of the reasonable accommodations for her disability.

57. This includes, but is not limited to, telling Plaintiff she could not eat, take a bathroom break or have water. This also includes threatening Plaintiff with discipline for exercising her accommodations.

58. Defendant's conduct violated the Americans with Disabilities Act.

59. Defendant's conduct caused Plaintiff damages, including but not limited to, lost wages, emotional harm, and other costs.

## COUNT V: RETALIATION

60. Plaintiff reasserts and realleges all previously pled paragraphs as if fully stated herein.

61. By complaining of discrimination and harassment, and by requesting reasonable accommodations for her diabetes, Plaintiff was engaging in protected activity under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the Americans with Disabilities Act.

62. Defendant retaliated against Plaintiff for engaging in the protected activity. This includes, but is not limited to, having coworkers make incident reports against Plaintiff, threatening Plaintiff with discipline for exercising her accommodations, threatening Plaintiff with discipline for complaining of discrimination by investigating her complaints as "false", placing Plaintiff on unpaid administrative leave pending its investigations, disparaging and humiliating Plaintiff in front of other coworkers and detainees, placing Plaintiff in an unsafe environment by not moving her to a different unit after she was threatened and harassed by detainees, telling Plaintiff that she and only she could not have water on her person, and changing Plaintiff's accommodations so that she would be subjected to mandatory overtime against the restrictions recommended by her doctor.

63. Defendant's conduct violated Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the Americans with Disabilities Act. Defendant's conduct was willful and reckless, and was committed with intentional disregard for Plaintiff's rights under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the Americans with Disabilities Act..

64. Defendant's conduct caused Plaintiff damages, including but not limited to, lost wages, emotional harm, and other costs.

**CONCLUSION AND PRAYER FOR RELIEF**

WHEREFORE Plaintiff SANDRA DURAN respectfully requests the Honorable Court grant judgment in her favor and against Defendant, awarding:

A. Actual damages;

B. Compensatory Damages;

C. Liquidated Damages;

D. Punitive Damages;

E. Costs;

F. Attorney's fees; and

G. Such other relief as the Court deems just and equitable.


June 9, 2022

Respectfully Submitted,
SANDRA DURAN
Plaintiff

By:

Christina Abraham, Esq.
Abraham Law and Consulting, LLC
161 N. Clark Street, Suite 1600
Chicago, IL 60601
(312) 588-7150
Christina.w.abraham@gmail.com

Attorney for Plaintiff